## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL SHANKER, on behalf of himself and all others similarly situated | : |
| Plaintiffs, | : Civil Action No. 3:09-cv-1759 (FLW) |
| v. | : |
| FAIR COLLECTION & OUTSOURCING, LLC | : |
| Defendants. | : **OPINION** |

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion to Dismiss brought by Defendant Fair Collection and Outsourcing, LLC ("FCO" or "Defendant") to dismiss Plaintiff Samuel Shanker's ("Plaintiff") Complaint.  In his Complaint, Plaintiff alleges that Defendant failed to inform him, and others similarly situated, in its correspondences that the communication was from a debt collector, in contravention of 15 U.S.C. § 1692(e)(11), commonly referred to as the Fair Debt Collection Practices Act ("FDCPA").  Plaintiff also alleges that Defendant's representative, in violation of the FDCPA, improperly disclosed to a third party in a phone call that Plaintiff owed a debt that was now in collection.  The Court has reviewed the parties' submissions, and for the reasons stated below, Defendant's Motion to Dismiss is granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the Court will assume the facts as alleged in Plaintiff's Complaint are true.

Plaintiff alleges that on or about March 23, 2009, Sue Wilson, an FCO representative, called Plaintiff's home.  When Plaintiff's wife, Cynthia Shanker, advised Wilson that Plaintiff was not currently available, Wilson identified herself as a representative from FCO and that Plaintiff owed over $5,686.15, payable immediately.  On or about March 30, 2009, FCO, via a representative, again called Plaintiff's home.[1]  Plaintiff, being home at the time, spoke directly to the FCO representative and denied owing any money and requested verification of the debt.  Plaintiff subsequently received the verification in the form of a letter signed by Wilson on April 2, 2009, which informed Plaintiff that he owed over $5,686.15 to Meridian Terrace LLC.  The contents of the letter, which Plaintiff provides as an exhibit to his Complaint, is at the crux of the current litigation.  The letter, signed by Wilson, states in boldface type: "**VERIFICATION OF THE DEBT**," which Plaintiff requested after his March 30th conversation with Wilson.  The letter goes on to state:

> Dear Mr./Ms. Shanker,
>
> Enclosed per your request is verification of the above noted debt.  If there is a discrepancy, contact this office immediately.
>
> If yo have any questions, please contact your collector.
>
> Sincerely,
>
> /s/ Sue Wilson
>
> Fair, Collections & Outsourcing

---

[1] Plaintiff's Complaint does not elaborate whether Wilson was the representative that called Plaintiff on March 30, 2009.

2

As a result of these communications, Plaintiff alleges that FCO is in violation of two provisions of the FDCPA, including (1) 15 U.S.C. § 1692(11), which requires a debt collector to disclose in all communications that the communications is coming from a debt collector; and (2) 15 U.S.C. § 1692(c)(b), which prohibits a debt collector from disclosing to a third party the nature of the alleged debt without the debtor's prior consent.  Plaintiff initiated this action in United States District Court for the District of New Jersey on April 14, 2009.  FCO subsequently filed this Motion to Dismiss on May 12, 2009.  For the reasons that follow, FCO's Motion to Dismiss is granted.

## II. DISCUSSION

### A. Standard of Review for Motion to Dismiss

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As

the Third Circuit has stated, "[t]he Supreme Court's <u>Twombly</u> formulation of the pleading

standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual

matter (taken as true) to suggest' the required element. This 'does not impose a probability

requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at

234 (quoting <u>Twombly</u>, 127 S.Ct. at 1965).

**B. Count Two - Violation of FDCPA, 15 U.S.C. § 1692(c)(b)**

In his opposition, Plaintiff consents to the dismissal of Count Two.  Accordingly, FCO's

Motion to Dismiss with respect to Count Two is granted.

**C. Count One - Violation of FDCPA, 15 U.S.C. § 1692(e)(11)**

Section 1692(e)(11) of the FDCPA provides that:

> A debt collector may not use any false, deceptive, or misleading representation or
> means in connection with the collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of this section:
>
> > (11) The failure to disclose in the initial written communication with the
> > consumer and, in addition, if the initial communication with the consumer is
> > oral, in that initial oral communication, that the debt collector is attempting to
> > collect a debt and that any information obtained will be used for that purpose,
> > and the failure to disclose in subsequent communications that the
> > communication is from a debt collector, except that this paragraph shall not
> > apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692(e)(11).

As an initial matter, the Court must determine whether FCO's attachment of what it describes

as the missing second page of the April 2, 2009 letter should be considered in the disposition of

the present motion.  Ordinarily, "courts. . .consider only the allegations contained in the

Complaint, exhibits attached to the Complaint and matters of public record." <u>Pension Benefit</u>

4

Guaranty Corp. v. White Consolidated Industries, 998 F.2d 1192, 1196 (3d Cir. 1993).  There are limited instances, however, where the court can go beyond the pleadings and consider extraneous documents submitted by a defendant.  Thus, where a defendant introduces an "undisputedly authentic document," which is expressly intertwined with the plaintiff's claims, the court may consider that document on a motion to dismiss.  Id.; In re Campbell Soup Company Securities Litigation, 145 F. Supp. 2d 574, 588 n.1 (D.N.J. 2001); Syncsort Inc. v. Sequential Software, Inc., 50 F. Supp. 2d 318, 325 (D.N.J. 1999).

Here, FCO argues that the April 2, 2009 letter, which Plaintiff attaches to his Complaint, is germane to the disposition of Count I, and as such, FCO may submit a copy of the second page of the letter for this Court's consideration.  While FCO intimates that Plaintiff purposefully omitted the second letter from its filing, the Court need not concern itself with such posturing. To the extent that FCO attempts to raise a question as to whether Plaintiff did receive the entire letter, that is a fact issue not appropriate for consideration on a motion to dismiss. Based on Plaintiff's allegations, the Court must consider whether the first page of the letter, standing alone, meets the minimum requirements imposed by the FDCPA.[2]  Thus, for the purposes of this Motion, the Court will consider whether the first page would properly inform the consumer that the communication was coming from a debt collector.

---

[2]FCO makes much to do about the fact that Plaintiff did not explicitly allege in his Complaint that he never received the second page of the April 2, 2009 letter.  The problem with this argument is that it presupposes that Plaintiff knew there was a second page to the letter when he filed his Complaint. However, Plaintiff would not have known there was a second page until after the commencement of this litigation and could not have expressly alleged that, for instance, FCO's failure to include the second page violated the FDCPA.  What Plaintiff did allege, however, is that the first page of the letter, without reference to the second, was insufficient to communicate to the least sophisticated consumer that the communication was coming from a debt collector.

Turning to Count I of Plaintiff's Complaint, the Court must determine whether the April 2, 2009 letter effectively communicates to the "least sophisticated consumer" that the aforementioned letter was coming from a debt collector.  To that end, FCO cites the various portions of the letter, namely the bold heading "**VERIFICATION OF THE DEBT**" and the letter's instructions for Plaintiff to contact "[his] collector" if he had any questions.  Taken together, FCO argues that even if the letter does not expressly contain the phrase "debt collector," any consumer would be put on notice that the April 2, 2009 letter was a communication from a debt collection agency.

Given the abundant evidence of abusive and deceptive practices, Congress provided redress to consumers subjected to such unfair collection practices by debt collectors with the passage of the FDCPA. Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227, 233 (3d Cir. 2005); Pollice v. National Tax Funding, L.P., 224 F.3d 379, 400 (3d Cir. 2000). Section 1692(e), the particular provision of the Act at issue in this case, prohibits the dissemination of false, misleading, or deceptive communications in connection with the collection of a debt.  "[C]ourts have [generally] analyzed the statutory requirements [of 1692(e)] 'from the perspective of the least sophisticated debtor.'" Campuzano-Burgos v. Midland Credit Management, Inc., 550 F.3d 294, 298 (3d Cir. 2008) (quoting Rosenau v. Unifund Corp., 539 F.3d 218, 222 (3d Cir. 2008). The standard is less exacting than that of the reasonable consumer. Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000); Brown v. Card Service Center, 464 F.3d at 453 ("This lower standard comports with a basic purpose of the FDCPA")..

To that end, the Third Circuit has expounded that the "least sophisticated debtor" standard is "'lower than simply examining whether particular language would deceive or mislead a

6

reasonable debtor.'" Wilson, 225 F.3d at 354 (quoting Smith v. Computer Credit, Inc., 167 F.3d

1052, 1054 (6th Cir. 1999).  The extremely low threshold set by the standard is "to ensure that the

FDCPA protects all consumers, the gullible as well as the shrewd.  This standard is consistent

with the norms that courts have traditionally applied in consumer protection law."  Wilson, 225

F.3d at 354. That does not permit, however, the callow debtor to evade his or her obligations

based on "bizarre or idiosyncratic interpretations of collection notices." Rosenau, 539 F.3d at

221. Thus, courts must presume that the unsophisticated debtor has read a notice in its entirety

and does so not only with a basic level of understanding but a willingness to read with some care.

Campuzano-Burgos, 550 F.3d at 299 (citing Federal Home Loan Mortgage Corp. v. Lamar, 503

F.3d 504, 510 (6th Cir. 2007). While "statutory notice [under 1692(e)]  must not only explicate a

debtor's rights; it must do so effectively," Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir.

1991), honest debt collectors need not tailor their communications to the idiosyncracies of each

consumer to comply with the FDCPA.  Campuzano-Burgos, 550 F.3d at 299.

 Essentially, Plaintiff urges this Court to find that a debt collector can only convey its identity

in accordance with its obligations under the FDCPA with the use of a specific phrase, i.e., "This

is an attempt to collect a debt by a debt collector." However, courts faced with similar challenges

have not required "magic words" or specific phrases to meet the strictures of 1692(e).  By way of

example, in Forman v. Academy Collection Service, Inc., the district court held that a debt

collector's failure to track the language of the FDCPA did not violate the statute so "long as the

warning c[ame] across."  388 F. Supp. 199, 205 (S.D.N.Y. 2005) (citing Gaetano v. Payco, 774

F. Supp. 1404, 1409 (D. Conn. 1990)).  With respect to section 1692(e)(11), the Tenth Circuit

has noted that subsection 11 does not use quotation marks, nor specify language, to be used by a

debt collector to properly disclose its identity:

> We also take note that § 1692e(11) does not place the required disclosure in quotation marks or set forth any specific required wording for the disclosure but merely defines what the content of the required disclosure will be: " that the debt collector is attempting ..."

> The definition of the term "disclose" is sufficiently ambiguous that, in an appropriate context, it could be construed to include other forms of making facts known than verbal statements.

Dikeman v. National Educators, Inc., 81 F.3d 949, 952 (10th Cir. 1996).  While

the case law indicates a preference to protect the most naive of consumers, it does not do so at

the expense of common sense.  See Campuzano-Burgos, 550 F.3d at 299; Wilson, 225 F.3d at

353.

    In determining whether a communication violates the least sophisticated debtor standard, this

Court must look to the entire language of the communication viewed as a whole. See, e.g.,

Campuzano-Burgos, 550 F.3d at 300 ("Viewed as a whole, the settlement offers are not

deceptive"); Brown, 464 F.3d at 453;  Forman, 388 F. Supp. at 205.   This analysis compels this

Court to look at the entire April 2, 2009 letter, and discern whether the credulous debtor would

be deceived, not to glean the letter for specific language that tracks the statute. Viewed in that

context, Plaintiff's position is untenable, as it would render the "least sophisticated consumer"

standard a superfluous exercise.  Instead of focusing on the communication as a whole, a court

adhering to Plaintiff's interpretation would find a violation of section 1692(e) based solely on

whether the communication contained the specific language of the statute.

    When reading the letter in its entirety, the least sophisticated consumer would be well aware

that a letter titled "**VERIFICATION OF THE DEBT**" signed by a representative of Fair,

8

Collections & Outsourcing, LLC, was a communication disseminated by a debt collector.  The letter goes on to explicitly alert the recipient that if he has any questions, he should feel free to contact his <u>collector</u>, in this case, Sue Wilson.  Indeed, Plaintiff, in disputing that he owed any amount, <u>requested</u> the April 2, 2009 letter after speaking with an FCO representative. Plaintiff cannot now stick his head in the sand and plead ignorance as to the source of the letter or the meaning of "**VERIFICATION OF THE DEBT**." <u>See</u> <u>Campuzano-Burgos</u>, 550 F.3d at 299 (finding that the least sophisticated consumer test, while lenient, does not "provide solace to the willfully blind or non-observant").  Plaintiff has not identified in what way the first page of the letter is deficient, except as to intimate that the FCO's failure to unequivocally disclose that the April 2, 2009 letter was a "communication from the debt collector" runs afoul of section 1692(e)(11).  Notwithstanding, the Court finds that section 1692 (e)(11)  does not go as far as to require that every communication from a debt collector be emblazoned with explicit language taken verbatim from the statute. The Court is unable to decipher an alternate meaning from the letter, let alone a deceptive or inaccurate one, that would trigger the FDCPA's safeguards. <u>See</u> <u>Rosenau</u>, 539 F.3d at 222 (finding that a communication is deceptive under the FDCPA when "it can be reasonably read to have two or more different meanings, one of which is inaccurate"). Accordingly, Count I of Plaintiff's Complaint is dismissed.

**III. CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint is dismissed in its entirety.


Dated June 19, 2009                                     /s/ Freda L. Wolfson
                                                         Freda L. Wolfson, U.S.D.J.

9